IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ALICIA MONET HARRIS PLAINTIFF

VS. CIVIL ACTION NO. 2:16cv50-FKB

NANCY A BERRYHILL,
Commissioner of Social
Security DEFENDANT

**ORDER**

Alicia Monet Harris filed for adult child disability insurance benefits and supplemental security income alleging disability beginning May 1, 2012, because of lupus.[1] After her applications were denied both initially and upon reconsideration, she requested and was granted a hearing before an ALJ. The hearing was held on October 10, 2014, and on November 26, 2014, the ALJ issued a decision finding that Harris was not disabled. The appeals council denied review. Harris now brings this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Having considered the memoranda of the parties and the administrative record, the Court concludes that the decision of the Commissioner should be reversed and this matter remanded to the Commissioner.

Harris was born on May 9, 1995, and was (19) years of age at the time of the ALJ's decision. She was a community college student at the time of her hearing and has no relevant work experience. In May of 2012, Harris was admitted to Oschner Medical Center and diagnosed with systemic lupus erythematosus (SLE) with multi-

[1] A disabled adult child of someone who meets the requirements for old age or disability insurance benefits, or who has died, may qualify for benefits based upon the parent's work history if he or she can demonstrate an onset of disability before the age of 22. 20 C.F.R. § 404.350(a).

organ complications including class IV lupus nephritis, moderate restrictive lung disease, pleural effusion, and pericardial effusion. [6] at 199-206, R. at 195-202. She was begun on immunosuppressant therapy. [6] at 201, R. at 197. Harris was discharged after three weeks in stable condition. [6] at 204, R. at 200.

The primary physician coordinating Harris's care is Dr. Kismet Collins, a rheumatologist at Oschner, whom Harris has seen on a regular basis since her diagnosis. The medical record indicates that since her hospitalization, she has had problems with anemia, fatigue, headaches, abdominal pain, joint pain, depression, and anxiety. Her nephritis has been stable, as has her shortness of breath.

On October 31, 2012, Dr. Collins provided a written statement summarizing Harris's medical history and prognosis. Dr. Collins explained that Harris was being treated for SLE manifested by nephritis, pleuritis, pericarditis, severe anemia requiring multiple transfusions, and thrombocytopenia. [6] at 384, R. at 380. She stated that Harris is on immunosuppressive medications and antihypertensive medication. *Id*. Dr. Collins described Harris's medications as high-risk and stated that she is at risk for relapse. *Id*. Specifically, Dr. Collins noted that Harris had developed profound neutropenia in August of 2012, resulting in a temporary discontinuation of her immunosuppressants. *Id*. Dr. Collins stated that Harris would at times be absent from school because of regular doctor visits and blood work. *Id*. Dr. Collins characterized Harris's prognosis as guarded. *Id*.

Dr. Collins completed a lupus impairment questionnaire on July 19, 2013, in which she described Harris's primary current symptoms as abdominal pain, headache,

fatigue, depression, shortness of breath, ankle swelling, anemia, arthralgia of the knees, and peripheral edema. [6] at 432-33, R. at 428-29. Dr. Collins stated that Harris cannot currently work a 5-day work week. [6] at 433, R. at 429. She opined that in a normal work day, Harris can sit 0-1 hour, can stand/walk 0-1 hour, can lift no amount, and cannot push, pull, kneel, bend, or stoop. [6] at 433-35, R. at 429-31. Dr. Collins estimated that Harris would likely be absent from work more than three times a month as a result of her impairments or treatment. [6] at 434, R. at 430. Finally, she opined that Harris's pain and other symptoms were severe enough to interfere frequently with her attention and concentration. [6] at 435, R. at 431.

In April of 2014, Dr. Collins wrote a letter to the disability accommodations office at Harris's community college requesting that Harris be housed in a private room in order to reduce her risk of infections. [6] at 477, R. at 473. A letter from Dr. Collins to that same office in August of 2014 stated Harris would require leniency with absences and tardiness. [6] at 478, R. at 474

Also included in the record is the evaluation of Dr. Gregory McCormack, the agency consultant who reviewed Harris's medical records on April 15, 2013. Dr. McCormack concluded that Harris has the residual functional capacity to perform light work. [6] at 61-63, R. at 57-59.

At the hearing, Harris testified that she is in her second year of community college, taking a full load, and maintaining a 3.6 GPA. [6] at 43-44, R. at 39-40. She receives special accommodations in the form of a private dorm room and leniency with tardiness and absences. [6] at 48-49, R. at 44-45. She estimated that in a typical week

she is tardy for class approximately two or three times and absent one time due to either illness or medical appointments. *Id*. Harris stated that her symptoms include fatigue, arthritis, shortness of breath, anxiety, depression, and abdominal pain. [6] at 45, 50, R. at 41, 46. According to Harris, her arthritis has progressed since her diagnosis, but her shortness of breath has improved. [6] at 45, R. at 41. In the afternoon after her classes, she usually takes a three- or four-hour nap. [6] at 48, R. at 44. Harris suffers brief panic attacks approximately three times per month. [6] at 50, R. at 46. She is able to drive but avoids driving long distances because of arthritis in her elbow and shoulder. [6] at 44, R. at 40. Concerning her exertional abilities, Harris estimated that she could lift or carry two pounds, stand 15 minutes at a time, sit 45 minutes at a time, and walk 100 yards. [6] at 46-47, R. at 42-43.

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[2] He found that Harris has the severe impairment of

---

[2] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. § 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

stage IV lupus nephritis. [6] at 25, R. at 21. At step three, the ALJ determined that Harris does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [6] at 27, R. at 23. The ALJ found that Harris has the residual functional capacity to perform a wide range of sedentary work. *Id.* In making his determinations, the ALJ gave little weight to the opinions of Dr. Collins. [6] at 30, R. at 26.[3] The ALJ considered Harris's subjective allegations of limitations but found that they were "less than credible." *Id.* At step four, the ALJ found that Harris has no past relevant work. [6] at 31, R. at 27. At step five, the ALJ found, based upon the testimony of a vocational expert, that Harris is capable of performing the jobs of receptionist, telephone sales worker, and message taker. [6] at 32, R. at 28. The ALJ therefore found that Harris is not disabled. *Id.*

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). In support of remand, Harris argues that the ALJ erred in rejecting the opinion of Dr. Collins without good cause and without providing the detailed analysis required by *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). The Court agrees.

The Fifth Circuit has held that generally, a treating physician's opinion as to the nature and severity of a claimant's impairment is to be given controlling weight if it is

[3] The ALJ also gave little weight to the opinion of the agency consultant, who opined that Harris could perform a wide range of light work.

well-supported by objective medical evidence and not inconsistent with other substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995). However, an ALJ may give less weight, or even no weigh, to a treating physician's opinion where there is good cause shown. *Greenspan v. Shalala*, 38 F.3d 232, 237 (1994).

A special rule applies where there is no opinion of a treating or examining physician that contradicts the opinion of a treating physician:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).

*Newton*, 209 F.3d at 453 (emphasis in original). The criteria set forth in C.F.R. § 404.1527(d)(2) provide that the ALJ consider the following: (1) the length of the relationship between the claimant and the treating physician, and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) whether the treating physician's opinion is consistent with the record as a whole; (5) whether the treating physician is a specialist; and (6) other factors which tend to support or contradict the opinion.

The only explanation provided by the ALJ for his rejection of Dr. Collins's opinions was that they were not consistent with overall evidence or with Dr. Collins's own treatment notes and that Dr. Collins's August 2014 letter concerning accommodations failed to quantify the extent of Harris's expected absences or tardiness. [6] at 30-31, R. at 26-27. There is no evidence in the ALJ's written decision that any consideration was given to the length and nature of the relationship and the

frequency with which Harris has been examined by Dr. Collins, nor to the fact that Dr. Collins is a specialist at one of the country's most respected medical institutions. Furthermore, the record contains no medical evidence from a treating or examining physician that contradicts Dr. Collins's opinion. Thus, the ALJ failed to apply the correct legal standard in that he did not comply with *Newton*'s mandate.

For these reasons, this matter is hereby remanded to the Commissioner. Upon remand, the ALJ shall provide a detailed consideration, in accordance with 20 C.F.R. § 404.1527(d)(2), of Dr. Collins's opinions.

A separate judgement will be entered.

So ordered, this the 26th day of July, 2017.

s/ F. Keith Ball
United States Magistrate Judge